UNITED STATES OF AMERICA )
)
v. ) 3:24-CR-100
) JUDGE VARLAN
CHARLES ANDREW CROTHERS )

**GOVERNMENT'S SENTENCING MEMORANDUM AND MOTION FOR
AN UPWARD VARIANCE FROM THE SENTENCING GUIDELINES RANGE**

The United States of America, by and through the United States Attorney for the Eastern District of Tennessee, hereby files its sentencing memorandum and motion seeking an upward variance from the Sentencing Guidelines range calculated in this case. While the United States agrees that the Guidelines range was properly determined to be one hundred twenty-one to one hundred fifty-one (121-151) months imprisonment, the United States does not believe that this range adequately takes into consideration the defendant's position of trust as a police officer while committing his crimes against multiple children, and his attempt at obstructing justice during the resolution of the case. The United States urges the Court to vary upwards from the guideline range and impose the two hundred and ten (210) month sentence of imprisonment followed by twenty (20) years on supervised release. The parties agree that a two hundred and ten (210) month imprisonment cap is appropriate in this case. [Doc. 35, ¶ 6].

**Plea Agreement**

The defendant has entered into a plea agreement of the kind specified in Federal Rules of Criminal Procedure 11(c)(1)(C). If a plea agreement includes a specific sentence, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), the Court may accept the agreement if the Court is satisfied that: (1) the agreed sentence is within the applicable guideline range; or (2)(A) the

agreed sentence is outside the guideline range for justifiable reasons; and (B) those reasons are set forth with specificity in the statement of reasons form. *See* U.S.S.G. §6B1.2(c).

The 11(c)(1)(C) agreement between the parties is above the calculated guideline range of one hundred twenty-one to one hundred fifty-one (121-151) months imprisonment. [Doc. 40, ¶ 69]. The parties agreed to cap the sentence at two hundred and ten (210) months imprisonment based on two additional minor victims being discovered after the defendant was initially indicted. Had the indictment been superseded adding two additional counts of enticement, in violation of 18 U.S.C. § 2422(b), the top end of the guidelines range would be two hundred and ten (210) months imprisonment.

The two additional counts, under USSG§ 3D1 *et seq.*, would give each of the three victims one unit, thereby adding three additional points to the guideline range. The Guidelines range for the three additional victims calculates to one hundred sixty-eight to two hundred ten (168-210) months imprisonment after acceptance of responsibility. The parties agreed to cap the sentence at two hundred and ten months (210) months imprisonment followed by a term of supervised release as well as any lawful fines, special assessment fees, forfeiture and restitution imposed by the Court.

The United States respectfully asks this Court to sentence the defendant to two hundred ten (210) months imprisonment as this case is outside the heartland of enticement cases. The defendant committed his crimes while working in his capacity as a career law enforcement officer, thereby abusing his position of trust. The defendant was initially caught by communicating with an undercover officer (UC). During the investigation, the defendant was found to have been enticing two actual children for sex. While the defendant was being held in jail until the completion of the case, the defendant produced three letters he purported came from

2

his ex-wife. The letters stated her new husband had gotten hold of the defendant's phone, allowing the new husband to put the enticement communications on the phone to set up the defendant.

**Background**

"Our mission is to provide quality public service based on high ethical and professional standards." This is the Rockwood Police Department (RPD) motto where the defendant was employed. It was not the personal motto of the defendant, although he was an RPD investigator for seven (7) years, including when committing his crimes. [PRS, ¶ 63]. Prior to being employed with RPD, he was employed as a law enforcement officer serving different communities, to include the Carteret County Sheriff's Office in North Carolina from 2012-2014; Blount County Sheriff's Office in Tennessee from 2014-2017; and Oak Ridge Police Department in Tennessee for a month in 2017. Prior to becoming a law enforcement officer, the defendant had served in the United States Marine Corps from 2005-2012. [*Id.*]

The defendant presented himself as a public servant: a law enforcement officer with whom the community could put their faith and trust. During his tenure as law enforcement, the defendant investigated crimes against children. The defendant used, and thought, this knowledge would shield him from getting caught enticing teenage girls for sex. He was successful for a time, and the defendant was able to keep his sexual deviancy from the public and from his co-workers. But as often happens with child predators, the defendant became overconfident in his crimes and he made a mistake.

In June of 2024, the Blount County, Alabama Sheriff's Office (BCASO) was working an undercover operation. An undercover officer (UC) was posing as a fifteen (15) year old female child on the Chat IW website. [Plea Agreement, Doc. 35, pg. 2]. The UC's persona was

'BamaGirl". [*Id*.]  The defendant, who was thirty-seven (37) years old at the time, made the initial contact, and he and the UC messaged back and forth.  The UC provided the defendant with a cellphone number, and they began texting back and forth. [*Id*.]  The defendant requested photos of "BamaGirl" both nude and clothed. [*Id*., pg. 3].  Within two days' time, the defendant had asked about breast size, sex acts, status of pubic hair, the need for condoms because he would not be "pulling out," and a time and place to meet. [*Id*.]  The meeting time and location were decided.  The defendant went so far as to take pictures from the highway from his unmarked vehicle to prove to "BamaGirl" that he was driving to the meet location, however, the defendant failed to show.

The entire communication between the UC and the defendant was fraught with the defendant's arrogance and overconfidence.  During the communication, he sent images of himself to include a selfie of his face and penis to the UC. [*Id*.]  Further, the defendant had the audacity to take and send an image of his penis that showed he had on pants worn by law enforcement on duty.  The image also showed a Marine poster in the background, and a bookshelf containing a criminal justice handbook. [*Id*.]  The background of the image ultimately identified the defendant, and proved he was communicating with the UC while on duty with the RPD.

In September of 2024, the defendant was charged with attempted enticement and attempted production of child pornography (CP). [PSR, ¶ 1 and 2].  Continued investigation of the defendant's cell phones revealed that he had not only communicated with the UC in Alabama, whom he believed to be a 15-year-old female, but that he had texted with other minor females earlier that same year.

In April of 2024, and five months subsequently, the defendant texted with a 15-year-

4

old minor female from Michigan. [*Id.*, ¶ 27]. The defendant told the child that he wanted to have sex with her. [*Id.*]. The defendant enticed the minor, telling her she was beautiful, that he wanted to have children with her, that he was romantic and would take care of her. [*Id.*]

In June of 2024, only a few days before the defendant contacted "BamaGirl," the defendant began a chat with a minor female he knew to be a 13-years-old who lived in Colorado. In the early part of the communication, the child confided in the defendant that she had had sex with her father's friend the night before. [*Id.*, ¶ 28]. The child was crying out for help! Instead of immediately getting the child out of the dangerous situation, as law enforcement should, he capitalized on this child's vulnerability. The defendant continued to communicate with the child. The defendant enticed the child to have sex with him, told the child he could ejaculate inside of her to get her pregnant, sent her pictures of his penis, and requested CP of her. [*Id.*] The child complied by sending CP. [Id.]. That child is still being exploited to this day.

### Factors to be Considered Under 18 U.S.C. § 3553(a)

A sentence above the advisory Guidelines range is appropriate in this case based on the factors delineated in 18 U.S.C. § 3553(a). As the Supreme Court has recognized, a sentence outside the Guidelines range may be imposed if "the Guidelines sentence itself fails properly to reflect § 3553(a) considerations." *Rita v. United States*, 551 U.S. 338, 351 (2007). Further, in *Pepper v. United States*, 131 S. Ct. 1229 (2011), the Court emphasized that 18 U.S.C. § 3661 expressly authorizes sentencing courts to consider, "without limitation, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law." (*Id.* at 1240). And, in *United States v. Loaiza-Sanchez*, 622 F.3d 939 (8th Cir. 2010), the Court stated that any "criminal conduct, whether or not related to the offense of conviction . . . is part of 'the history and characteristics of the defendant' that the district court

5

'shall consider' in imposing an appropriate sentence, 18 U.S.C. § 3553(a)(1), and it may be relevant in a particular case to the factors enumerated in § 3553(a)(2)."

In imposing an appropriate sentence, the Court must consider "(1) the nature and circumstances of the offense and the history and characteristics of the defendant, and (2) the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense, (B) to afford adequate deterrence to criminal conduct, (C) to protect the public from further crimes of the defendant, and (D) to provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a).

Specifically, the § 3553(a) factors that support an upward variance are to reflect the seriousness of the offenses, provide just punishment, afford adequate deterrence to criminal conduct and to protect the public from further crimes of the defendant.

### i. *Reflect the seriousness of the offense, promote respect for the law and provide just punishment for the offense.*

The defendant's crimes are serious!  Any crime involving minors for sexual gratification is abhorrent.  The defendant was found to have had two additional real minor victims after he was caught communicating with the Alabama UC.  With one of those victims, a 15-year-old girl whom he exchanged inappropriate images with, he talked about having sex with her without a condom, even though it was illegal as he was 22 years her senior. [*Id*. at ¶ 27].  The defendant communicated with this minor for five months.

The defendant's next victim was only 13 years old at the time he enticed and exploited her.  Within only three days, the defendant had enticed her for sex, sent her an image of his penis, and asked for and received CP of the child.

What takes his crimes outside the heartland of other such cases is the position of trust he

6

had as a law enforcement officer in his community.  The defendant chose a career as a police officer.  He had been one for many years while he committed his crimes.  Being a public servant, especially a law enforcement officer, is a difficult career path and not for everyone.  People in society place a great deal of faith and expectations on law enforcement to ensure they are protected.  Children are taught at a young age to find a police officer if they are lost or in danger.  The defendant violated that faith.  The defendant hid behind his badge while enticing young girls with his lies and predilection for sexual gratification by using minors.  Every time society is presented with crimes committed by law enforcement, especially sex crimes against children, the public trust for law enforcement is stripped away, making law enforcement more difficult.

The defendant's criminal acts show he has no respect for the law or his position as law enforcement.  It is doubtful that any length of sentence will make the defendant respect the law; but imposing a hefty sentence of 210 months imprisonment will make the public take notice.  This is essential to facilitate repairing the damage to RPD's reputation specifically, and other law enforcement agencies generally.   Hopefully with time and good works of other law enforcement, trust lost by the community because of the defendant's crimes will be repaired.

Law enforcement officers put their lives on the line to serve and protect their communities.  A police officer sworn to serve and protect sends a message to the community that he/she accepts the community's expectation of exemplary character.  If the community does not trust its law enforcement, the system breaks down and the community and law enforcement lives are put in danger.  Every time an officer breaks the law, there is a "chink in the armor" protecting the community.  When a police officer commits a sex crime against a child, the level of harm is incalculable because there is no justification for the crime.

The defendant chose to be a public servant, understanding the immense responsibility that comes with being a police officer. He not only victimized children, but he put doubts into the minds of his community, making the jobs of RPD officers and other law enforcement much more difficult. The defendant not only victimized children, but he also victimized every member of RPD and sullied the department's reputation! The lost trust may never be repaired, but at least a 210-month term of imprisonment sends a message to the community that his crimes committed while being an RPD officer will not be tolerated.

What is most concerning is that the defendant committed his crimes while on duty as a police officer. First, while communicating with "Bamagirl," the defendant brazenly sent images of his penis while he was in his office at RPD and used his RPD vehicle to pretend to be driving to meet the victim. Second, when communicating with the 13-year-old girl, she confided in him early in the communication that she had had sex the night before with her father's friend from work. A law enforcement background is not needed to understand this child was in a dangerous situation from which she needed to be extricated from immediately. The defendant had experience in working crimes against children. He knew the severity of the situation. There were multiple things he could have done to protect that child from additional victimization. He could have attempted to learn where she lived and her name to at least make a call to the Department of Children and Family Services in the state where she lived. He could have made an anonymous call to the local police department. However, for the defendant, it was more important to victimize her again by enticement and exploiting the child who had just been raped by a man the night before. Third, the defendant, in working cases involving crimes against children, knew the lifelong affects his sex crimes would have on his victims. He also knew that it would be extremely difficult to identify these victims to get them help. Still, he put

8

his sexual proclivities first.

To attain just punishment, the defendant, being a career police officer while committing his crimes against children, must be given grave consideration. This consideration was not applied when determining the proper guideline calculations. It is a fact that puts the defendant's case outside the heartland of similar cases. The fact must be applied in analyzing the 3553(a) factors for an upward departure for a just punishment.

## ii. Deterrence

Both specific and general deterrence must be considered. Specific deterrence is important in this case as the defendant may be a member of society again. As if the defendant's previously-discussed criminal acts weren't bad enough, his criminal behavior did not stop after being incarcerated while awaiting trial. The defendant has attempted to obstruct justice. Sometime after the defendant pled guilty, the defendant provided his attorney with three different letters all purported to be from his ex-wife. The letters all contained confessions of a sort wherein the ex-wife states that her new husband had gotten hold of the defendant's phone and had planted enticement communications with children. One of the letters claimed she had already provided the assistant United States attorney with this information, which was not the case. Law enforcement investigated the letters and proved the letters were not written by the ex-wife. So far, the defendant has not attempted to produce the letters in court or to the United States Attorney's Office for any reason. However, if the letters had been taken seriously, the ex-wife and her current husband are currently co-defendants before this Court for sexually exploiting children. Two of the victims in their case are this defendant's children. The forged letters could have caused serious issues. The defendant's action of producing these letters is yet another factor that takes the actions surrounding his criminal case outside of the heartland of

9

cases.  These actions should be scrutinized under a § 3553(a) analysis to be considered for an upward departure from the guidelines range to 210 months imprisonment.

### iii.      *To Protect Society from Further Crimes of the Defendant*

The defendant will most likely request a sentence below the 11(c)(1)(C) cap of two hundred ten (210) months imprisonment.  The defendant is now a convicted child predator.  The safety of society's children must take precedence in determining a just sentence for the defendant.  The defendant will receive a second chance to be a productive member of society, but only the defendant knows if he will do so.  The only definite thing is that the defendant cannot prey on another child while in prison.  From his acts we know he not only disrespects the law but does so in uniform.  His crimes were not an anomaly; he was quite prolific at obtaining victims in a short period of time.  The defendant violated three minor victims while in his position of trust as a police officer.  When balancing his crimes/position of trust/safety of the children in the community against the defendant changing his ways, a two hundred ten (210) month sentence of imprisonment wins.

**<u>Conclusion</u>**

This case is outside the heartland of cases. The facts that take this case outside the heartland are serious and deserve an upward variance from the calculated guideline range. As a result, the United States requests this Court impose a sentence of two hundred and ten (210) months imprisonment followed by twenty (20) years on supervised release.

Respectfully submitted,

FRANCIS MARION HAMILTON, III
UNITED STATES ATTORNEY

By:  *Jennifer Kolman*
JENNIFER KOLMAN
Assistant United States Attorney
Bar# 427930
800 Market Street, Suite 211
Knoxville, Tennessee 37902
(865) 545-4167
*Jennifer.kolman@usdoj.gov*

Case 3:24-cr-00100-TAV-DCP    Document 45    Filed 05/21/26    Page 11 of 11
PageID #: 140